In re **TIDAL EQUIPMENT COMPANY, INC.**, a Delaware corporation, United States of America, Plaintiff-Intervenor.

**Civ. A. No. 81–75–JLL.**

United States District Court, D. Delaware.

Dec. 3, 1985.

Glenn E. Hitchens, of Morris, James, Hitchens & Williams, Dover, Del., for petitioner Marjorie M. Hanhauser.

Robert K. Beste, of Biggs & Battaglia, Wilmington, Del., for Harry J. Michaelson.

N. Maxson Terry, Jr., of Terry, Jackson & Wright, Dover, Del., Receiver for Tidal Equipment Co., Inc.

Sue L. Robinson, Asst. U.S. Atty., Wilmington, Del., and John S. Miles, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-intervenor, U.S. of America.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LATCHUM, Senior District Judge.

This Court sitting in equity held an evidentiary hearing on October 25, 1985, after due notice to all parties in interest, in order to determine who owned the shares of stock of Tidal Equipment Company, Inc., a Delaware corporation in dissolution. After carefully considering the sufficiency and weight of the testimony adduced at the hearing, the demeanor and credibility of the witnesses who testified, the documents admitted into evidence, the file in this case, and the post-trial submissions of the interested parties, the Court enters the following findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

## FINDINGS OF FACT

1. This is a proceeding for the dissolution of Tidal Equipment Company, Inc. ("Tidal"), a Delaware corporation, pursuant to 8 *Del.C.* § 273. The proceeding was originally filed in the Court of Chancery of the State of Delaware in and for Kent County on December 19, 1979. (Docket Item ["D.I."] 9, Ex. 1.) The Court of Chancery on January 28, 1981, permitted the United States of America to intervene in the proceeding pursuant to 26 U.S.C. § 7424 (D.I. 9, Ex. 23) in order to assert Federal tax liens against the property owned by George J. Hanhauser. (*Id.*, Ex. 22.) On February 23, 1981, this proceeding was removed from the Court of Chancery to this Court in accordance with 28 U.S.C. §§ 1444, 2410, 1345 and 1441(b). (D.I. 1.) As previously noted, the present dispute concerns the ownership of Tidal's stock.

2. The dissolution proceeding was instituted by the filing of a verified Petition by George J. Hanhauser and Marjorie M. Hanhauser, his wife. (D.I. 9, Ex. 1.) The petition avers that:

(a) Mr. & Mrs. Hanhauser and Harry J. Michaelson ("Michaelson") in the summer of 1975 agreed to engage in the metal container business (i.e., purchasing, refurbishing and resale of metal shipping containers). (*Id.*, Ex. 1, ¶ 4.)

(b) In order to carry out this agreement, on October 24, 1975, the Hanhausers and Michaelson formed Tidal under the name "Tidal Equipment Corporation, Inc.," but later on January 29, 1976, through an

amendment of the Certificate of Incorporation the corporate name was changed to "Tidal Equipment Company, Inc." which name has remained to date. (*Id.* ¶ 3.)

(c) The Hanhausers "agreed to equally share in the profits and losses of the business venture" with Michaelson (*id.* ¶ 7); it was agreed that a stock certificate evidencing ownership of one-half of the outstanding shares of Tidal would be issued to the Hanhausers "in the name of Marjorie M. Hanhauser" (*id.* ¶ 8); a stock certificate (which cannot be found) "was prepared evidencing the ownership of 100 shares of [Tidal] stock by George and Marjorie M. Hanhauser." (*Id.*)

(d) The Hanhausers and Michaelson, as shareholders, had been "unable to agree upon the desirability of discontinuing the joint venture and disposing of the assets of Tidal" (including a wholly-owned subsidiary, Coastal Leasing, Inc. ("Coastal"). (*Id.* ¶ 13.)

(e) The petition for dissolution was filed by the Hanhausers because Tidal had not been run effectively since mid-1979 when Mr. Hanhauser became ill and Michaelson's proposal (for the transfer of all Tidal stock to him in return for all Coastal stock to the Hanhausers) was still being negotiated but Tidal was unable to conduct its business effectively. (*Id.* ¶¶ 9, 10, 11 & 12.)

(f) The Hanhausers thus prayed that the Chancellor enter an order dissolving Tidal and, after the payment of all debts, distributing the remaining funds to Michaelson and the Hanhausers. (*Id.* Ex. A.)

3. Michaelson in his response on April 16, 1980, to the petition for dissolution generally admitted the averments of the petition but emphatically denied that he had ever entered into an agreement with Marjorie M. Hanhauser (D.I. 9, Ex. 7, ¶ 4) and denied that there was an agreement that any stock certificate would be issued to Mrs. Hanhauser alone. (*Id.* ¶ 8.) Michaelson did dispute that Tidal was insolvent and proposed a somewhat different plan of dissolution and distribution of Tidal's assets. (D.I. 9, Ex. 7.)

4. By a Stipulation and Order entered in the Delaware Court of Chancery on January 28, 1981, Tidal was dissolved and N. Maxson Terry, Jr., was appointed Receiver of Tidal under 8 *Del.C.* § 279 and has since then served in that capacity. (D.I. 9, Ex. 32.) Over the course of the past several years the affairs of Tidal have been substantially wound up.

5. When the Court of Chancery entered an order permitting the United States to intervene in the proceedings (D.I. 9, Ex. 23), the United States filed a complaint in intervention (*id.*, Ex. 21.) That complaint in substance alleged that Mr. Hanhauser owed the United States a substantial amount of income taxes for the years 1966, 1967, 1968 and 1969 together with penalty and interest thereon and prayed that the Court adjudge that Mr. Hanhauser was indebted to the United States, that it did have valid and subsisting tax liens which encumbered Mr. Hanhauser's 50% stock interest in Tidal, that the tax liens be foreclosed against his 50% stock interest in Tidal, and that if Tidal is dissolved the proceeds in dissolution due to Mr. Hanhauser be distributed to the United States towards satisfaction of his outstanding tax liabilities. (*Id.*)

6. On March 30, 1981, when Mr. Hanhauser did not answer or otherwise plead to the United States' complaint in intervention, the Clerk of this Court upon the Government's motion entered a default against Mr. Hanhauser pursuant to Rule 55(a), Fed.R.Civ.P. (D.I. 4.)

7. On June 3, 1981, this Court upon the United States' motion entered a default judgment against Mr. Hanhauser in favor of the United States for delinquent income taxes, penalties and interest in the amount of $186,441.29, plus statutory additions. The Court also ruled that the tax liens of the United States were foreclosed against the proceeds from the dissolution and liquidation of Tidal which were due to Mr. Hanhauser, and that the Receiver distribute such proceeds to the United States up to the amount necessary to satisfy the judgment of June 3, 1981. (D.I. 11 & 12.)

8. Mr. Hanhauser predeceased his wife Marjorie on December 29, 1984 (Tr. 4).[1]

9. At the evidentiary hearing and in her post-trial brief, Mrs. Hanhauser contends that she, and not her husband, was and is a 50% owner of Tidal's stock, or alternatively, that 50% of Tidal's stock was issued in the joint names of George and Marjorie Hanhauser as tenants by the entirety, and by virtue of Mr. Hanhauser's death, she became the 50% stockholder of Tidal as the surviving spouse. (Tr. 3; D.I. 87, pp. 4–5.) On the other hand, the United States contends that 50% interest in Tidal was always owned by Mr. Hanhauser and not Marjorie Hanhauser. (Tr. 3; D.I. 88, p. 4.)

10. It is undisputed by any party that Mr. Michaelson owns 50% of Tidal. (D.I. 89, p. 1; D.I. 88, p. 4.)

11. Tidal Equipment Corporation, Inc., was incorporated on October 24, 1975, pursuant to an agreement reached in mid-1975 between George J. Hanhauser, Jr. and Harry J. Michaelson. (GX 3, 4, 5; Tr. 80–82, 89–91, 93, 96–97.)[2]

12. The original stock records of Tidal Equipment Corporation, Inc. were produced at trial by the Receiver of Tidal. (Tr. 48–52.) Copies of the relevant documents were introduced into evidence as GX 1 and 2. (Tr. 50–52.) GX 1 is comprised of two pages of the stock certificate book of Tidal Equipment Corporation, Inc., showing the issuance of stock certificates 1 and 2 on November 24, 1975. Certificate No. 1 for 50 shares was issued to Harry J. Michaelson as an original issue, and Certificate No. 2 for 50 shares was issued to George J. Hanhauser also as an original issue. (GX 1; Tr. 50.) GX 2 is a page from a stockholder register confirming the issuance of stock certificates nos. 1 and 2; it lists the stockholders in alphabetical order, indicating that certificates 1 and 2 were issued, respectively, to Mr. Michaelson and Mr. Hanhauser for 50 shares each on November 24, 1975, and that the amount paid by

each certificate holder was $2,000. (GX 2; Tr. 51–52.)

13. The Certificate of Tidal Equipment Corporation, Inc., stated that George Hanhauser and Harry J. Michaelson were to act as the original directors to serve until the first annual meeting of shareholders. (GX 3, ¶ Sixth.)

14. The preparation and filing of the Certificate of Incorporation was performed by Glenn E. Hitchens, Esquire ("Mr. Hitchens"), who dealt only with Messrs. Hanhauser and Michaelson. (GX 3, 4 & 5.)

15. Mr. Hitchens wrote Mr. Michaelson, with a copy to Mr. Hanhauser, on November 5, 1975, requesting information concerning a proposed 1975 Annual Franchise Tax Report of Tidal Equipment Corporation, Inc., and in that letter Mr. Hitchens suggested "that the stockholders of the corporation informally agree upon directors and officers to be elected for the coming year." (GX 6.)

16. On December 2, 1975, Mr. Hitchens again wrote to Mr. Michaelson, with a copy to Mr. Hanhauser, transmitting for signature a proposed Certificate of Amendment to the Certificate of Incorporation, in order to change the corporate name from Tidal Equipment Corporation, Inc. to Tidal Equipment Company, Inc. (GX 7.) Again on December 31, 1975, Mr. Hitchens wrote to Mr. Michaelson with a copy to Mr. Hanhauser inquiring about the Certificate of Amendment to the Certificate of Incorporation and about the payment for his services in forming the corporation. (Id.)

17. The Certificate of Amendment changing the corporate name was executed on January 22, 1976. The certificate recites that the amendment was approved at a special meeting of stockholders (GX 8) and was filed on January 29, 1976. (D.I. 9, Ex. 1, ¶ 3.b.)

18. Mr. Hitchens wrote Mr. Michaelson on April 28, 1976, with a copy to Mr. Hanhauser, stating that he, at Mr. Hanhauser's

---

1. The trial transcript is D.I. 86 and will be referred to herein as Tr. followed by the page number of the transcript.

2. "GX" refers to Government Exhibits admitted into evidence.

request, had ordered and received a corporate kit composed of a corporate seal, stock certificate, minute book and set of model bylaws for Tidal Equipment Company, Inc. (GX 11.)

19. Sometime between April 28, 1975 (when Tidal's corporate kit was received) and December 19, 1979 (when the Hanhausers' petition was filed), new certificates for stock in the amended name of the corporation were issued. The stock record indicates that Certificate No. 1 for 50 shares was issued to "Harry J. Michaelson and/or Margaret Michaelson" and that Certificate No. 2 for 50 shares was issued to "Marjorie M. Hanhauser and/or George J. Hanhauser" and backdated to 11/24/75. (GX 9.) Certificate No. 1 for 50 shares indicated that "Harry J. Michaelson and/or Margaret Michaelson" were the owners of those shares. (GX 10.) It must be noted, however, that Mr. Michaelson's name appears on the stock record (GX 9) in different handwriting than that of Mr. Michaelson's name; in addition, the name of Mrs. Michaelson was inserted on Stock Certificate No. 1 by a different typewriter from that used for the typing of Mr. Michaelson's name. (GX 10.) Mr. Michaelson testified that about two years after the corporation was set up, Mr. Hanhauser discussed the matter of Mrs. Hanhauser becoming a stockholder (Tr. 89) and that when Mr. Hanhauser discussed putting his wife's name on the stock certificate, he said it was all right to add Mrs. Michaelson's name. (Tr. 91.) Thus, Mrs. Michaelson's name was added to the stock record in the handwriting of Mr. Michaelson, and Mr. Michaelson's secretary typed Mrs. Michaelson's name on certificate no. 1 previously issued to Mr. Michaelson. (*Id.*)

20. Tidal's stock record does not indicate that any additional consideration was paid for those newly issued shares. (GX 9.) Indeed, Mrs. Hanhauser testified that no additional capital was paid to Tidal for stock (Tr. 17) and Mr. Michaelson also testified that $4,000 was the only amount paid in 1975 upon the formation of the company for stock. (Tr. 93, 99.) The only reasonable inference is that these shares of stock were issued as replacement certificates for the shares originally issued.

21. Mrs. Hanhauser testified that when Tidal was originally formed in 1975, she was to be 50 percent owner alone of its stock, Mr. Michaelson was to be the other 50 percent owner and that she made out her stock certificate in her own name. (Tr. 12–13.) Mr. Michaelson contradicts this testimony and testified that Mr. Hanhauser was the other 50 percent stockholder. (Tr. 83, 87, 89.) Mr. Michaelson also testified that it was not until at least two years later that Mr. Hanhauser proposed Mrs. Hanhauser as a stockholder. (*Id.*) The Court finds that Mr. Michaelson's testimony, supported by only written documentary evidence (GX 1), is more likely so than not and that Mr. Hanhauser was the record owner of 50 percent of the stock when the company was first formed in 1975.

22. The Court also finds that sometime after the corporate name was changed in January 1976, replacement certificates were issued and backdated to replace the original certificates. At this point a discussion developed over who would be named in the replacement certificate as the 50 percent shareholders. Mr. Michaelson testified that Mr. Hanhauser then suggested putting Mrs. Hanhauser on the certificate as a 50 percent owner but that Mr. Michaelson resisted because he believed only he and Mr. Hanhauser should be stockholders according to their original agreement. (Tr. 85–86.) Finally, Mr. Hanhauser suggested adding Mrs. Hanhauser to Mr. Hanhauser's certificate and that Mrs. Michaelson's name be added to Mr. Michaelson's certificate. (Tr. 91.) It was then that this was accomplished with the understanding that Mrs. Hanhauser would have nothing to do with "running" the company. (Tr. 26, 91–92.) The exact date when Mrs. Hanhauser's name was added to Mr. Hanhauser's replacement certificate and when Mrs. Michaelson's name was added to Mr. Michaelson's replacement certificate cannot be fixed with any certainty. Mr. Michaelson testified, however, that it was a couple of

years after the corporation was formed in 1975. (Tr. 89.)

23. The Court finds that the $2,000 which Mr. Hanhauser paid for his 50 percent of the stock of Tidal at the time the company was formed came from a joint checking account of Mr. and Mrs. Hanhauser to which both contributed with their salary checks. (Tr. 9, 10.) Mr. Michaelson recalls that Mr. Hanhauser showed him the check for $2,000 which Mr. Hanhauser had signed. (Tr. 82.) This testimony, however, is not inconsistent with Mrs. Hanhauser's testimony that the check was drawn on the Hanhauser's joint account.

24. Mrs. Hanhauser never took any part in the active running or the operation of the corporate business although she did discuss the business with her husband (Tr. 20, 88); moreover, Mrs. Hanhauser was never an officer or director of the company. (Tr. 28.)

25. The Hanhausers in the early 1970's became aware that Mr. Hanhauser had tax problems with the Internal Revenue Service ("IRS") as a result of Mr. Hanhauser's business in operating another corporation known as Fab-Weld. Furthermore, Mr. Hanhauser's tax attorney, Frank Warmouth, at some indefinite date, advised that Mr. Hanhauser should not go into business again and that Mrs. Hanhauser if she had anything in her name should keep it that way and not add Mr. Hanhauser's name to it. (Tr. 18, 27–28.)

26. On April 4, 1979, assessments and notice of demand were given by the delegate of the Secretary of Treasury to George Hanhauser, pursuant to 26 U.S.C. § 6321, for past due taxes, interest and penalties then in the amount of $108,-897.37. (D.I. 11.) Additional assessments and notices of demand were given to Mr. Hanhauser on June 7, 1979, November 28, 1979, August 26, 1980, November 7, 1980, January 16, 1981 and February 4, 1981. (*Id.*)

## CONCLUSIONS OF LAW

1. This action was properly removed to this Court from the Delaware Court of Chancery where it was commenced. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7401 and 7403.

2. The original stock of Tidal was issued on November 24, 1975; Certificate No. 1 for 50 shares was issued to Harry J. Michaelson alone and Certificate No. 2 for 50 shares was issued to George J. Hanhauser alone.

3. Mr. Hanhauser paid $2,000 for his 50 shares of the original issue with a check drawn on a joint account with his wife Marjorie M. Hanhauser to which account each had deposited their income and salaries.

4. After the minor change of Tidal's name in January 1976, replacement shares were prepared by the Hanhausers and submitted by Mr. Hanhauser to Mr. Michaelson. Replacement Certificate No. 1 for 50 shares was again issued in Mr. Michaelson's name alone. However, Certificate No. 2 was prepared in the name of Marjorie M. Hanhauser alone. Mr. Michaelson objected to Mrs. Hanhauser as the other 50 percent owner of the outstanding shares. Apparently about two years later (in 1977), Mr. Hanhauser and Mr. Michaelson resolved the matter by changing the way the original shares were registered by adding Mrs. Michaelson's name to Mr. Michaelson's replacement Certificate No. 1 and by adding Mr. Hanhauser's name along with Mrs. Hanhauser's name to replacement Certificate No. 2.

5. The effect of this change of names on the Hanhauser shares was to turn the stock from the individual ownership by Mr. Hanhauser into shares held in joint tenancy similar to tenancy by the entirety because Mr. & Mrs. Hanhauser were husband and wife. This is particularly true since the shares were initially paid for by funds from their joint checking account to which each had contributed. *Moser v. Moser*, 287 A.2d 398, 400 (Del.Supr.1972); *Reinhart v. Reinhart*, 22 Del.Ch. 431, 180 A. 913 (1935); *Ciconte v. Barba*, 19 Del.Ch. 6, 161 A. 925 (1932).

6. The only testimony as to this change in ownership indicates that it occurred about two years after the corporation was formed—some time in 1977.

7. The replacement certificate for the 50 shares of Tidal to Marjorie M. Hanhauser and/or George Hanhauser created an estate by the entireties, that is, Mr. & Mrs. Hanhauser from 1977, but neither of them alone, were stockholders of Tidal. Upon the death of one tenant, the survivor continues to own the same estate in the shares, held by both of them prior to the death of one. *In re Giant Portland Cement Co.*, 26 Del.Ch. 32, 21 A.2d 697, 703 (1941).

8. The tax lien of the United States against Mr. Hanhauser did not become effective against his personal property until April 4, 1979.

9. The Government's lien therefore did not attach against the shares held jointly by Mr. & Mrs. Hanhauser as tenants by the entirety when created in 1977.

10. Upon Mr. Hanhauser's death on December 29, 1984, the 50 shares of Tidal in the names of "Marjorie Hanhauser and George J. Hanhauser" devolved upon her alone by operation of law.

11. The United States further contends that if the replacement certificate was transferred from Mr. Hanhauser to him and his wife as tenants by the entirety, such a transfer would be void as fraudulent because Mr. Hanhauser was insolvent at the time. The Court, however, is unable to conclude from the evidence in the case that Mr. Hanhauser was insolvent in 1977 —the time when the replacement certificate was issued jointly to Mr. & Mrs. Hanhauser—and therefore is unable to hold that the transfer was fraudulent. At that time the substantial tax liens of the United States against Mr. Hanhauser did not become effective until some two years later. True, there was evidence that Mr. Hanhauser left no estate at the time of his death on December 29, 1984 (D.I. 83, p. 58) but that was some several years after the stock was issued jointly.

12. The Court therefore concludes based on the credible evidence that Marjorie M. Hanhauser is now the sole owner of 50 shares (one-half) of the outstanding shares of Tidal which she holds free and clear of any United States tax lien against George Hanhauser. Thus, she is entitled to 50 percent of the distributable proceeds due the stockholders in this dissolution proceeding free and clear of any claim for taxes due from Mr. Hanhauser.

An order will be entered in accordance with these findings of fact and conclusions of law.